UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOMAS MULLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:14-01077 |
| v. | ) Judge Campbell/Brown |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

To: The Honorable Todd J. Campbell, United States District Judge.

## REPORT AND RECOMMENDATION

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final decision of the Social Security Administration ("the SSA"), through its Commissioner ("the Commissioner"), denying plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i) and 423(d), and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 17) be **DENIED** and the Commissioner's decision **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI on August 26, 2010 alleging a disability onset date of October 31, 2007. (Doc. 11, pp. 32-33, 75, 98, 175)[1] Plaintiff claimed that he is unable to work because of back problems, heart attack with stent, mental problems, blood pressure, and depression. (Doc. 11, pp. 37-38) Plaintiff's claims were denied initially on July 8, 2011 and again upon reconsideration

---

[1] References to page numbers in the Administrative Record (Doc. 11) are to the page numbers that appear in **bold** in the upper right corner of each page.

on January 10, 2012. (Doc. 11, pp. 32-33, 37-49)

Plaintiff requested a hearing before an administrative law judge (ALJ) on February 1, 2012. (Doc. 11, pp. 50-51) A hearing was held on May 1, 2013 in Nashville before ALJ Shannon Smith. (Doc. 11, pp. 414-40) Vocational expert (VE) Kenneth Anchor testified at the hearing. (Doc. 11, pp. 414, 424-25, 435-39) Plaintiff was represented by attorney Robert Parker. (Doc. 11, p. 414)

The ALJ entered an unfavorable decision on July 12, 2013. (Doc. 11, pp. 10-24) Attorney Parker filed a request with the Appeals Council on July 12, 2013 to review the ALJ's decision. (Doc. 11, p. 6) The Appeals Council denied plaintiff's request on February 24, 2014, whereupon the ALJ's decision became the final decision of the Commissioner. (Doc. 11, pp. 6-9)

Counsel brought this action on plaintiff's behalf on April 30, 2014. (Doc. 1) Plaintiff filed a motion for judgment on the administrative record on October 14, 2014 (Doc. 17), and the Commissioner responded on November 17, 2014 (Doc. 20). Plaintiff did not reply. This matter is now properly before the court.

## II. REVIEW OF THE RECORD

### A. Medical Evidence[2]

Doctor Darshana Patel, M.D., conducted a consultive examination of plaintiff on January 3, 2011. (Doc. 11, pp. 194-96) Doctor Patel wrote the following in his summary:

> .... Based on the evaluation today he ... has significant morbid obesity and decrease in range of motion of his hips likely due to a combination of pain as well as obesity ....

(Doc. 11, p. 196)

Plaintiff presented to Dorothy Lambert, Ph.D., on March 8, 2011 for a consultive clinical

---

[2] Review of the medical record has been tailored to plaintiff's claims of error. Those portions of the medical records not covered in this R&R are incorporated by reference.

2

interview and testing. (Doc. 11, pp. 197-202) Doctor Lambert reported the following:

> He is markedly impaired in the ability to understand and remember short work-like procedures and locations. He is mildly impaired in concentration and persistence. . . .

(Doc. 11, p. 201)

Horace Edwards, Ph.D., conducted a consultive mental residual functional capacity (RFC) assessment on March 29, 2011. (Doc. 11, pp. 203-06) Doctor Edwards determined that plaintiff:

> Can understand, remember, and carry out one, two, and three step instructions . . . [h]as the ability to sustain attention and concentration for periods of at least two hours in a typical 8 hour day . . . .

(Doc. 11, p. 205) Doctor Edwards wrote the following in the accompanying psychiatric review technique form:

> Statements concerning the intensity, duration, and limiting effects of symptoms are not credible to the extent they are inconsistent with medical and functional evidence. Cl performed poorly on formal testing yet graduated high school and has one year of college. He has worked several years for the state and had other emplo[y]ment. . . . Totality of evidence fails to support mental retardation. . . . Some weight is given Dr Lambert but she proposed limitations based primarily on his poor cognitive performance and since this is not consistent with his education level, her proposed restrictions are not supported by the preponder[a]nce of the evidence. . . .

(Doc. 11, p. 219)

A consultive physical RFC evaluation was conducted on July 8, 2011.[3] (Doc. 11, pp. 221-29) The examiner determined that plaintiff could perform light work with postural and environmental limitations. (Doc. 11, pp. 222-25) The examiner also determined that plaintiff's alleged impairments were contradicted by his admitted activities of daily living. (Doc. 11, p. 226)

Fawz Schoup, Ph.D., conducted a consultive mental RFC assessment on December 16, 2011.

---

[3] The examiner's name/signature is illegible.

(Doc. 11, pp. 230-33) Doctor Schoup determined that plaintiff could:

> understand and remember . . . low level detailed tasks . . . has the ability to maintain attention and concentration for the above named tasks . . . .

(Doc. 11, pp. 232) In the accompanying psychiatric review technique form, Dr. Schoup noted that:

> MR NOT SUPPORTED ... BY CL'S PRIOR WK HX AND BY HIS ADAPTIVE FUNCTION, WHICH DOES NOT APPEAR TO BE SIGNIFICANTLY LIMITED BY INTELLECTUAL CAPACITY. IN ADDITION, IT IS UNLIKELY SOMEONE WITH MR WOULD BE ABLE TO ATTEND EVEN ONE YR OF COLLEGE.

(Doc. 11, p. 247)

Plaintiff had x-rays taken of his right knee at Summit Medical Center on April 24, 2012. (Doc. 11, pp. 253-54, 265) The x-rays revealed that "[n]o acute-appearing bony abnormality [wa]s evident [or demonstrated]." (Doc. 11, pp. 254, 265, 267)

Plaintiff was treated at the Middle Tennessee Health and Wellness Center from January 1, 2013 to April 11, 2013. (Doc. 11, pp. 326-92) Plaintiff was diagnosed repeatedly as being obese. (Doc. 11, pp. 332, 366, 368, 370, 372, 374, 376, 380, 382, 384)

### B. Transcript of the Hearing

The transcript of the hearing is incorporated herein by reference. Relevant parts of the transcript are addressed by exception in the analysis section of this R&R for ease of reference in connection with plaintiff's claims of error.

### C. The ALJ's Notice of Decision

Under the Act, a claimant is entitled to disability benefits if she can show her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§

4

404.1505, 416.905. Corresponding regulations outline the five-step sequential process to determine whether an individual is "disabled" within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2014). While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five to identify a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

The SSA's burden at step five may be met by relying on the *Medical-Vocational Guidelines*, known in the practice as "the grids," but only if the claimant is not significantly limited by nonexertional impairment, and then only when "the characteristics of the claimant exactly match the characteristics of one of the rules." *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). In cases where the grids do not direct a conclusion as to the claimant's capacity, the SSA must come forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through the testimony of a VE. *See Wright*, 321 F.3d at 616 (citing SSR 83-12, 1983 WL 31253 (SSA)). In determining the claimant's RFC for purpose of the analysis at steps four and five, the SSA is required to consider the combined effect of all the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), (5)(B); 20 C.F.R., 404.1523; 404.1545(a)(2); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 725-26 (6th Cir. 2014).

The ALJ determined that plaintiff had the RFC to perform light work with postural and environmental limitations. The ALJ also determined that plaintiff was able to:

> understand, remember and carry out one to three step instructions and maintain concentration, persistence and pace for such tasks with normal breaks throughout the day . . . interact with others and . . . adapt to occasional changes in the workplace and job duties.

(Doc. 11, p. 18)(bold omitted)

## III. ANALYSIS

### A. Standard of Review

The district court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards. 42 U.S.C. § 405(g); *Gayheart*, 710 F.3d at 374 (internal citations and quotation marks omitted). Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry*, 741 F.3d at 722 (internal citation omitted). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence also could support a different conclusion. *Gayheart*, 710 F.3d at 374 (internal citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

### B. Claims of Error

#### 1. Whether the ALJ Failed in Considering Plaintiff's Impairments
(Doc. 17-1, pp. 6-8)

Plaintiff makes the following arguments in his first claim of error: 1) the ALJ failed to include obesity, hypertension, and right knee abnormalities as severe impairments; 2) the ALJ erred in not analyzing these impairments properly; 3) the ALJ erred by not explaining adequately why she did not find these limitations to constitute severe impairments. This claim of error pertains to the ALJ's decision at step 2 as reflected in plaintiff's statement: "The Sixth Circuit, from time immemorial, has held that 'the step two severity regulation . . . [is] construed as a de minimis hurdle . . . .'" (Doc. 17-1, p. 6)

The ALJ determined that plaintiff had the following severe impairments at step 2: "degenerative disc disease of the lumbar spine, mild major depressive disorder, cognitive disorder and posttraumatic stress disorder . . . ." (Doc. 11, p. 15)(bold omitted) It is self-evident that obesity, hypertension, and right knee abnormalities are not among the severe impairments listed. However, the ALJ's failure to include these conditions as severe impairments constitutes harmless error, because the ALJ determined that plaintiff had other severe impairments that permitted plaintiff to clear step 2. *See Anthony v. Astrue*, 266 Fed.Appx. 451, 457 (6th Cir. 2008)(citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)(failure to find that an impairment was severe at step 2 was harmless error where other impairments were deemed severe). Because the ALJ's failure to include these limitations as severe impairments amounts to harmless error, her alleged parallel failures to analyze these limitations, and explain her decision not to include them as severe impairments, are harmless as well. Plaintiff's first claim of error is without merit.

### 2. Whether the ALJ Failed to Include a Function-by-Function Assessment in the RFC as Required by SSR 96-8p
### (Doc. 17-1, p. 9)

Plaintiff quotes extensively from SSR 96-8P in connection with this claim of error, then provides a single argument quoted below in its entirety:

> In the decision, the ALJ provided a lengthy RFC; however, the ALJ's decision does not include a function-by-function assessment. In accordance with [SSR 96-8P], it is clear that the ALJ failed to perform the required 'function-by-function assessment,' in the RFC finding correlating to symptoms and limitations which were well-documented in the record. . . .

(Doc. 17-2, p. 9)

Plaintiff provides no factual allegations in support of the argument above, *i.e.*, he does not specify what the ALJ allegedly omitted, got wrong, or should have done differently, he does not

explain how the ALJ's RFC assessment does not square with unspecified "well-documented" symptoms and limitations, nor does he provide any references to the record or citations to relevant authority that would assist in the court's analysis of this claim of error.

The district court is not obligated on judicial review to supply factual allegations in support of claims where no facts are alleged. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed.Appx. 540, 543 (6th Cir. 2014)(citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)("[W]e decline to formulate arguments on [appellant's] behalf"); *Moore*, 573 Fed.Appx. at 543 (citing *Stewart*, 628 F.3d at 256); *Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004)(citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)("[I]ssues . . . unaccompanied by some effort at developed argumentation, are deemed waived.")). Plaintiff's second claim of error is waived.

### 3. Whether the ALJ Failed to Consider and Weigh the Opinion Evidence of Drs. Lambert and Schoup
### (Doc. 17-1, pp. 9-12)

Plaintiff argues that the ALJ failed to state how much weight was assigned to Dr. Lambert's "opinion that [plaintiff] was markedly impaired in his ability to understand and remember short work-like procedures and locations." (Doc. 17-1, pp. 9-12) The portions of the decision relevant to this argument are quoted below:

> The claimant saw Dorothy Lambert, Ph.D. in·March of 2011. There were no psychiatric records available for review. . . .
>
> . . . . His intellectual functioning was within the mildly retarded range. . . . The claimant alleged difficulties in school with reading

> and writing, but acknowledged that he graduated from high school. He said he passed each grade because he played basketball and never got in trouble. . . .
>
> . . . . Dr. Lambert diagnosed major depressive disorder, mild and recurrent, PTSD, cognitive disorder, NOS, and 'Rule out mild mental retardation. . . . This opinion is given **significant weight**, as it is the only opinion from an examining professional. However, the assignment of marked limitation in understanding and remembering is **challenged** by the claimant's admission that he graduated from high school with a regular diploma and attended a year of college with a scholarship. Although it is acknowledged that not all scholarships are accompanied by significant academic achievement, it is not presumed likely that a scholarship would accompany the lack of academic skills alleged by the claimant. . . .

(Doc. 11, pp. 20-21)(emphasis added)

As shown above, the ALJ gave Dr. Lambert's opinion significant weight, at the same time challenging her opinion that plaintiff had marked limitations in understanding and remembering without specifying a particular weight that she gave to the challenged part of Dr. Lambert's opinion. That said, it can be deduced from the decision that the ALJ gave Dr. Lambert's opinion "zero weight" on the points at issue. More particularly, the RFC states: "He can understand, remember and carry out one to three step instructions . . . ." (Doc. 11, p. 18) Had the ALJ given Dr. Lambert's opinion any weight on these limitations, plaintiff would have been deemed disabled, *i.e.*, his alleged limitations to understand and remember "likely would rule out all full time work in a conventional job setting" as plaintiff argues recalling the VE's testimony. (Doc. 11, p. 438; Doc. 17-1, p. 11)

Where the ALJ's decision is sufficiently specific to make clear to subsequent reviewers the weight given to a source's medical opinion, and the reasons for that weight, the ALJ's failure to put a specific label on that weight is harmless error. *See Engebrecht v. Comm's or Soc. Sec.*, 572 Fed.Appx. 392, 400 n. 2 (6th Cir. 2014)(citing *Dunlap v. Comm'r of Soc. Sec.*, 509 Fed.Appx. 472, 476 (6th Cir. 2012)). Because the weight – zero here – and reasons for that weight – clearly stated

9

in the excerpt above – would be clear to subsequent reviewers, any error on the ALJ's part for not putting a specific label on it was harmless. Plaintiff's first argument is without merit.

Plaintiff's second argument is that the ALJ's explanation was inadequate because it "fail[ed] to acknowledge the record as a whole." (Doc. 17-1, p. 10) Although the ALJ is procedurally required to provide "good reasons" for discounting the weight given to the opinion of a "treating source," *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)), the ALJ is not procedurally required to give "good reasons" for the weight given to the opinion of a nontreating examining source, *see Ealy* v. Comm's of Soc. Sec., 594 F.3d 504, 514-15 (6th Cir. 2010). Indeed, the ALJ is not required to explain her reasons for the weight she gives to the opinion of nontreating, examining sources. *See Norris v. Comm'r. of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir. 2012)("[A]n ALJ need only explain [her] reasons for rejecting a treating source statement because such an opinion carries 'controlling weight' under the SSA.")(citing *Smith v. Comm'r. of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)("[T]he SSA requires ALJs to give reasons for only *treating* sources." (italics for emphasis in the original)). Because the ALJ was not required to explain why she discounted those parts of Dr. Lambert's opinion at issue, plaintiff's personal argument that her explanation was inadequate is without merit.

Plaintiff's third argument is that the ALJ failed to state how much weight she agave to Dr. Schoup's opinion. (Doc. 17-1, p. 12) Apart from the fact that this argument pertains to Dr. Schoup, plaintiff's third argument is no different than the first two. Consequently, plaintiff's third argument is without merit for the reasons explained above.

#### 4. Whether the ALJ Erred in Not Properly Considering Plaintiff's Literacy (Doc. 17-1, pp. 12-14)

Plaintiff argues that he is illiterate, and that the ALJ failed to consider his literacy properly.

More particularly, plaintiff argues that the ALJ "erred by failing to apply the GRIDS and find the claimant disabled . . . ." (Doc. 17-1, p. 14)

"Illiteracy means the inability to read or write. . . . [S]omeone [is] illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his . . . name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). A "[m]arginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. [G]enerally . . . formal schooling at the 6th grade level or less is a marginal education." 20 C.F.R. § 404.1564(b)(2). A "[h]igh school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. . . ." 20 C.F.R. § 404.1564(b)(4). "[T]he numerical grade . . . completed in school may not represent [one's] actual educational abilities." 20 C.F.R. § 404.1564(b).

The record shows that plaintiff can read and write, although not very well, and that he worked successfully for many years. The record shows that plaintiff graduated from high school, and that he attended one year of college on a basketball scholarship, although he flunked out of college his first year. The record also shows that Drs. Edwards and Schoup were of the opinion that plaintiff had the ability to understand, remember, and follow instructions. These factors provide substantial evidence that plaintiff was not illiterate as defined under 20 C.F.R. § 404.1564(b)(1). *See Caudill v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 510, 516 (6th Cir. 2011)(holding that the claimant was not illiterate under factually similar circumstances).

It is apparent from the record that plaintiff's education and his actual abilities do not square with one another, and that his level of literacy falls somewhere between the definitions of "illiteracy" and a "high school education and above." In other words, plaintiff's level of literacy does not fit

precisely any of the definitions above.

The Sixth Circuit wrote the following in *Kirk v. Sec. of Health and Human Serv's*, 667 F.2d 524 (6th Cir. 1981) under factually very similar circumstances:

> [The] appellant argues that he should have been characterized as illiterate which requires an 'inability to read or write . . . a simple message.'. . . It is apparent, however, that 'illiteracy' is not the proper description of appellant's abilities since he could indeed read and write albeit 'not too good.' While the category of 'marginal education' closely approximates appellant's abilities and grade level . . . this is one of those situations where no category perfectly matches appellant's characteristics. Hence, the grid should not have been applied.

*Kirk*, 667 F.2d at 540. The Sixth Circuit went on to hold that the lack of a perfect match precluded application of the grids, and remanded the case for expert vocational testimony to "illuminate which jobs, if any, appellant c[ould] handle with his . . . educational background." *Kirk*, 667 F.2d at 540. *Kirk* remains good law to this day.

The ALJ did not err in not applying the "grid" because, as explained in *Kirk*, plaintiff's literacy level is not a perfect match with any of the literacy levels set forth in 20 C.F.R. § 404.1564(b). Indeed, the ALJ would have committed reversible error had she done so. Plaintiff's fourth claim of error is without merit.

## IV. RECOMMENDATION

For the reasons explained above, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 17) be **DENIED** and the Commissioner's decision **AFFIRMED**.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy

thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 30th day of April, 2015.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge